# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## GREEN BAY DIVISION

---

**TRACY GERLACH**
**on behalf of herself and all**
**others similarly situated,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　**Case No. 1:18-cv-00170 WCG**

**WEST REVENUE GENERATION**
**SERVICES, LLC and**
**WEST CORPORATION,**

      **Defendants.**

---

## JOINT MOTION AND MEMORANDUM IN SUPPORT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

---

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 1

I. Procedural History ................................................................................. 1

II. Settlement Background ........................................................................... 2

III. The Settlement Agreement ..................................................................... 3

    A. The Rule 23 Classes and FLSA Collective Class ............................... 3

    B. Summary of Settlement Agreement's Terms ..................................... 4

IV. Preliminary Approval of Settlement is Appropriate ........................................ 7

    A. The Strength of the Case Vis-à-Vis the Settlement Amount ............................ 8

        i. Off-the-Clock Work ................................................................... 8

        ii. Short Meal Period Claim ........................................................... 11

        iii. Overtime/Bonus Claim .............................................................. 13

        iv. Failure to Pay Agreed Wage ........................................................ 14

    B. The Complexity, Length, and Expense of Litigation ..................................... 17

    C. The Absence of Fraud or Collusion in the Settlement .................................... 17

    D. The Lack of Opposition to the Settlement .......................................... 18

    E. Counsel's Opinion .......................................................................... 18

      F.    The Amount of Discovery and Stage of Proceedings ...................................... 18

V.    The Proposed Classes Should Be Certified For Purposes of Settlement ...................... 19

      A.    Numerosity ................................................................................................... 19

      B.    Commonality ................................................................................................. 19

      C.    Typicality ...................................................................................................... 20

      D.    Adequacy of Representation .......................................................................... 21

      E.    Predominance and Superiority ...................................................................... 21

VI.    The Proposed Collective Class Satisfies the FLSA For Purposes of Settlement .......... 22

VII.    The Proposed Notice and Manner of Service are Appropriate ..................................... 23

VIII.  Plaintiff's Incentive Award ........................................................................................... 24

IX.    Plaintiff's Attorneys' Fees and Requested Reimbursement of Litigation Expenses ..... 25

X.    The Parties' Notice Plan ............................................................................................... 27

CONCLUSION ...................................................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Adair v. Wis. Bell, Inc.*,
No. 08-C-280, 2008 U.S. Dist. LEXIS 68942 (E.D. Wis. Sept. 11, 2008).............................. 10

*Aguilera v. Waukesha Mem. Hosp., Inc.*,
No. 13-C-1245, 2015 U.S. Dist. LEXIS 79143 (E.D. Wis. June 18, 2015) ............................ 12

*Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*,
455 F.2d 101 (7th Cir. 1972) ................................................................................. 23

Alvarez v. City of Chicago,
605 F.3d 445 (7th Cir. 2010) ................................................................................. 23

*Bankston v. Illinois*,
60 F.3d 1249 (7th Cir. 1995) ................................................................................ 26

*Batt v. Micro Warehouse, Inc.*,
241 F.3d 891 (7th Cir. 2001) ................................................................................ 26

*Black v. Renaissance Learning, Inc.*;
No. 15-cv-635, 2016 U.S. Dist. LEXIS 192763 (W.D. Wis. Nov. 10, 2016) ................... 22, 24

*Blanchard v. Bergeron*,
489 U.S. 87 (1989)............................................................................................ 26

*Bontempo v. Metro Networks*,
No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810 (N.D. Ill. 2002)............................................ 23

*Brinker Restaurant Corp. v. Superior Court*,
273 P.3d 513 (Cal. 2012) ................................................................................... 12

*Burns v. Elrod,*

757 F.2d 151 (7th Cir. 1985) ................................................................... 24

*Chavez v. Lumber Liquidators, Inc.*,
No. CV-09-4812 SC, 2012 U.S. Dist. LEXIS 40984 (N.D. Cal. Mar. 26, 2012) .................... 13

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*,
797 F.3d 426 (7th Cir. 2015) ................................................................... 21

*Connolly v. Nat'l Sch. Bus Serv., Inc.*,
177 F.3d 593 (7th Cir. 1999) ................................................................... 26

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) .................................................................. 25

*Doster Lighting, Inc. v. E-Conolight, LLC*,
No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499 (E.D. Wis. June 17, 2015) ........................ 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ....................................................................... 23, 24

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ................................................................... 23

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2014) ................................................................... 21

*Fisher v. Kelly*,
105 F.3d 350 (7th Cir.1997) ................................................................... 26

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) ................................................................... 26

*Fond du Lac Bumper Exchange, Inc. v. JuiLi Enterprise Co., Ltd.*,
No. 09-cv-0852, 2016 U.S. Dist. LEXIS 82434 (E.D. Wis. June 24, 2016 ........................ 20

*Gautreaux v. Pierce*,
   690 F.2d 616 (7th Cir. 1982) ................................................................ 8, 26

*German v. Wisconsin DOT*,
   612 N.W.2d 50 (Wis. 2000) ................................................................... 12

*Gessele v. Jack in the Box, Inc.*,
   No. 3:10-cv-960-ST, 2013 U.S. Dist. LEXIS 51941 (D. Or. Jan. 28, 2013 ............. 12

*Goldman v. Lawton & Cates, S.C.*,
   2015 WI App 28 ................................................................................. 15

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................ 26

*Hoffmann-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) ............................................................................ 24

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ................................................................ 25

*In re Synthroid Mktg Litig.*,
   325 F.3d 974 (7th Cir. 2003) ................................................................ 26

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ................................................................ 26

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) ................................................................. 8

*Johnson v. GDF, Inc.*,
   668 F.3d 927 (7th Cir. 2012) ................................................................ 26

*Keele v. Wexler*,

149 F.3d 589 (7th Cir. 1998) ...................................................................................... 19, 20

*Langendorf v. Conseco Senior Health Ins. Co.*,
No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289 (N.D. Ill. 2009) ........................................... 7

*Lynn's Food Store, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ................................................................................ 8

*Mace v. Van Ru Credit Corp.*,
109 F.3d 338 (7th Cir. 1997) ................................................................................. 22

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ......................................................................... 23, 24

*Miller v. Thedacare, Inc.*,
No. 15-C-506, 2018 U.S. Dist. LEXIS 7767 (E.D. Wis. Jan. 17, 2018) ........................... 10, 12

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) ................................................................................. 20

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992) .............................................................................. 24

*Phillips v. Asset Acceptance, LLC*,
736 F.3d 1076 (7th Cir. 2013) ............................................................................... 21

*Pickett v. Sheridan Health Care*,
664 F.3d 632 (7th Cir. 2011) ................................................................................. 26

*Shiferaw v. Sunrise Senior Living Mgmt.*,
No. LA CV13-02171-JAK, 2016 U.S. Dist. LEXIS 187548 (C.D. Cal. March 21, 2016) ...... 14

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ................................................................................. 26

*Sliwinski v. City of Milwaukee*,
   777 N.W.2d 88 (Wisc. App. Ct. 2009) ...................................................... 12

*Small v. Richard Wolf Med. Instruments Corp.*,
   264 F.3d 702 (7th Cir. 2001) ................................................................. 26

*Smoot v. Wieser Bros. Gen. Contractors, Inc.*,
   No. 15-cv-424, 2016 U.S. Dist. LEXIS 57148 (W.D. Wis. Apr. 29, 2016) .............. 8

*Spicer v. Chi. Bd. Options Exch.*,
   844 F. Supp. 1226 (N.D. Ill. 1993) .......................................................... 24

*Suchanek v. Sturm Foods*,
   764 F.3d 750 (7th Cir. 2014) ................................................................. 19

*Swanson v. Am. Consumer Indus., Inc.*,
   415 F.2d 1326 (7th Cir. 1969) ............................................................... 19

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*
   463 F.3d 646 (7th Cir. 2006) ................................................................. 8

*Tasker v. Chieftain Wildrice Co.*,
   No. 02-1837, 2003 Wisc. App. LEXIS 302 (Wis. Ct. App. March 25, 2003) ............ 15

*United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.*,
   447 F.2d 647 (7th Cir. 1971) ................................................................. 7

*Uphoff v. Elegant Bath, Ltd.*,
   176 F.3d 399 (7th Cir. 1999) ................................................................. 26

*Wagner v. NutraSweet Co.*,
   95 F.3d 527 (7th Cir. 1996) .................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338 (2011)..................................................................................................... 19

*Walton v. United Consumers Club, Inc.,*
786 F.2d 303 (7th Cir. 1986) ....................................................................................... 8

*Woods v. Club Cabaret, Inc.,*
No. 1:15-cv-01213-JEH, 2017 U.S. Dist. LEXIS 198896 (C.D. Ill. 2017) ............................. 24

**Statutes**

29 U.S.C. § 216 ........................................................................................................ 26

Wis. Admin. Code § DWD 272.04 ........................................................................... 11

Wis. Admin. Code § DWD 274.02 ........................................................................... 11

Wis. Stat. § 109.01 ............................................................................................. 14, 15

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 7, 21

## INTRODUCTION

Plaintiff, Tracy Gerlach, individually and as representative of the classes of persons defined below in Section III.A. (the "Settlement Classes"), and Defendants, West Revenue Generation Services, LLC and West Corporation, jointly move for preliminary approval of the settlement agreement reached on July 18, 2018, during a mediation with Magistrate Judge James R. Sickel (the "Settlement Agreement"). The Settlement Agreement is fair and reasonable because it fully and adequately satisfies this Court's criteria for class and collective action settlements. As such, the parties respectfully request that the Court enter an order which (1) preliminarily approves the Settlement Agreement attached as Exhibit A; (2) certifies, for settlement purposes only, the proposed Rule 23 and FLSA classes; (3) appoints Walcheske & Luzi, LLC as Class Counsel; (4) appoints Plaintiff Tracy Gerlach as representative of the Settlement Classes; (5) approves the mailing of notice to class members in the form of Exhibits B and C; (6) sets deadlines for members of the Settlement Classes to opt in to, or out of, this lawsuit or object to the Settlement Agreement (as appropriate for each class); (7) finds that such notice process satisfies due process; and (8) schedules a hearing for final approval of the Settlement Agreement.

## STATEMENT OF FACTS

### I.  Procedural History

Defendant West Revenue Generation Services, LLC ("West RG") operates call centers serving various clients around the United States. Defendant West Corporation ("West Corp.") is the parent company of West RG and a global provider of communication and network infrastructure services. In the relevant time period, West RG has operated call centers in three Wisconsin locations: Appleton, Middleton, and Wausau. West RG also operates a facility in San Antonio, Texas.

Plaintiff Tracy Gerlach filed her class and collective action complaint against Defendants on January 31, 2018. (ECF No. 1.) Plaintiff has since filed an Amended Complaint (the "Complaint") after receiving leave of Court to do so. (ECF No. 33.)

Plaintiff was employed as a Sales Associate for West RG from approximately September 2015 to December 2017, and worked on a line group at its Appleton, Wisconsin facility servicing West RG's client, American Express ("AMEX"). In the Complaint, Plaintiff alleges that West RG and West Corp. violated the Fair Labor Standards Act ("FLSA") and Wisconsin's Wage Payment and Collection Laws ("WWPCL") by: (i) failing to pay West RG Sales Associates for off-the-clock work in violation of the FLSA and WWPCL; (ii) failing to pay West RG associates in Wisconsin who worked on AMEX programs for meal breaks lasting less than thirty minutes in violation of the WWPCL; (iii) failing to properly account for non-discretionary bonuses in overtime payments to West RG associates in violation of the FLSA and WWPCL; and (iv) failing to pay West RG associates in Wisconsin for time worked over eight hours in a work day in violation of the WWPCL.

Since this matter was commenced via ECF No. 1, fifteen individuals have filed consents to join the lawsuit. (ECF Nos. 5-6, 9-11, 15.) Plaintiff and the consenters are all current or former employees of West RG (and only 3 are current employees). None of the individuals have ever been employed by West Corp. During the relevant time period for this lawsuit (January 2015 to January 2018), West Corp. has not employed any non-exempt employees.

## II.    <u>Settlement Background</u>

At the parties' request, a mediation was scheduled and ordered by the Court and conducted in person by the parties on July 18, 2018, with the assistance of Magistrate Judge James R. Sickel. (ECF No. 25.) Plaintiff firmly believes in the viability and successfulness of her legal claims and causes of action against West RG and West Corp. Conversely, West RG and West Corp. have denied, and continue to deny, all liability and damages with respect to the causes of action asserted by Plaintiff. West RG and West Corp. further deny that class treatment is appropriate for Plaintiff's claims. To avoid the burden, expense, and uncertainty of continued litigation, however, the parties concluded that it was in their best interests to resolve the litigation during the July 18, 2018 mediation by entering into the Settlement Agreement which they now request this Court to approve.

Prior to mediation, the parties conducted formal written discovery. In addition, the parties engaged in an extensive informal exchange of information to ensure that all parties had adequate information to engage in meaningful settlement negotiations. Specifically, the parties exchanged initial disclosures, and Plaintiff served written interrogatories and requests for production of documents. West Corp. responded to the interrogatories and requests for production of documents and in the process of doing so, verified that West Corp. has had no non-exempt employees during the relevant time period. Although no formal depositions were taken, Plaintiff interviewed West RG's and West Corp.'s Director of Payroll to discuss the method by which West RG allocates non-discretionary bonuses for purposes of calculating overtime pay. In addition, West RG voluntarily produced substantial information to Plaintiff, including: weekly reports of hours worked and wages for all of West RG's non-exempt employees who worked on programs servicing AMEX during the two years prior to suit; daily meal punches for all of West RG's non-exempt employees who worked on programs servicing AMEX during the two years prior to suit; general West RG policy documentation; policy acknowledgements by Plaintiff and the consenters; and earnings information for Plaintiff and the consenters. In addition, the parties exchanged settlement communications and detailed mediation position statements in accordance with the Mediation Order. (ECF No. 26.)

On July 18, 2018, the parties engaged in an in person mediation for a full day before Judge Sickel. As a result of the negotiations of the parties at mediation, and with the assistance of Judge Sickel, the parties were able to reach a resolution of their dispute.

## III.  <u>The Settlement Agreement</u>

The parties' Settlement Agreement is attached as Exhibit A, and its terms are summarized below.

### A.  <u>The Rule 23 Classes and FLSA Collective Class</u>

Because Plaintiff brought claims under both the FLSA and WWPCL, the case involves both class action and collective action procedures. Plaintiff's WWPCL claims implicate the class action procedures under Federal Rule of Civil Procedure 23, while her FLSA claims involve

collective action procedures. For settlement purposes only, the parties have agreed to certification of the following three classes:

> i. A Rule 23 class of all associates who worked for West RG in Wisconsin at any time from January 31, 2016 to January 31, 2018 (the "Wisconsin Associate Class");
>
> ii. A Rule 23 class of all associates who worked for West RG in Wisconsin on a program servicing American Express at any time from January 31, 2016, to January 31, 2018 (the "Wisconsin AMEX Associate Class"); and
>
> iii. An FLSA collective class of all associates who worked for West RG in Texas from January 31, 2016, to January 31, 2018 (the "Texas Associate Class").

*See* Ex. A at ¶1(b). These three classes will be referred to collectively as the "Settlement Classes."

## B. Summary of Settlement Agreement's Terms

The general terms of the Settlement Agreement can be summarized as follows:

*Amendment of Complaint*. Plaintiff agreed to amend her complaint to: (1) narrow all class definitions to the time period from January 31, 2016 to January 31, 2018; and (2) assert her off-the-clock claims on behalf of the entire Wisconsin Associate Class. *See* Ex. A at ¶1(d). Plaintiff moved for leave to file this Amended Complaint on July 27, 2018, (ECF No. 31), and the Court granted Plaintiff's request on August 1, 2018. (ECF No. 33).

*Notice to Class Members.* Within the time limits prescribed by Section X, below, Plaintiff will send appropriate, court-approved notices to: (1) the Wisconsin Associate Class and Wisconsin AMEX Associate Class giving members of those classes the opportunity to, in writing, object to the Settlement Agreement or opt-out of the lawsuit; and (2) the Texas Associate Class giving members of that class the opportunity to, in writing, opt-in to the lawsuit. The notices shall also explain the scope of the release in the Settlement Agreement and the manner in which the members of the Settlement Classes may become bound by the Settlement Agreement. The proposed notices are attached as Exhibits B and C for the Court's approval.

*Settlement Fund*. In exchange for the releases and other consideration contained in the Settlement Agreement, West RG will pay settlement funds, in a maximum amount of $600,000, to a designated settlement administrator, which will be used to make the following payments: (1) individual checks to the members of the Settlement Classes who participate in the settlement (the "Settling Associates")[1]; (2) to Plaintiff's counsel for attorneys' fees and litigation expenses in the cumulative amount of $165,000.00; and (3) to Tracy Gerlach for an incentive payment in the amount of $7,500.00. *See* Ex. A at ¶ 2. The payment to each Settling Associate shall be calculated by West RG using the following methodology:

i. **Off-the-Clock Claims**. To account for overtime that was allegedly earned due to pre-shift activities, West RG shall make the following calculation based on the available payroll and timeclock data for each of the Settling Associates in the Wisconsin Associate Class and Texas Associate Class. Four minutes will be added to each shift during which the Settling Associate worked. West RG will assume a Settling Associate worked five shifts each week during which the Settling Associate performed any work. The individual payments shall include time-and-a-half wages for any resulting additional time worked over forty hours in a week, plus an additional amount of equal value to account for liquidated damages. These alleged damages shall be calculated for the time period January 31, 2016, to January 31, 2018. If a Settling Associate would otherwise receive a payment of less than $20.00 under this methodology, the Settling Associate will be entitled to a minimum amount of $20.00. *See* Ex. A at ¶4(b)(i).

ii. **Meal Period Claims**. With respect to alleged meal period claims by the Wisconsin AMEX Associate Class, West RG shall make the following calculation based on the available timeclock data for each of the Settling Associates in the Wisconsin AMEX Associate Class. For time periods when the Settling Associate was working on a program servicing American Express, West RG will identify the meal periods taken by the Settling Associate that were between 21 to 26 minutes in length. The individual payments shall include wages for the length of such meal periods at a wage rate of $12.50 per hour, plus a 50% increase. These

---

[1] Members of the Wisconsin Associate Class qualify to receive a payment, and become bound by the Settlement Agreement, if they do not opt-out of the case during the court-approved notice process. *See* Ex. A at ¶1(f). The same is true for members of the Wisconsin AMEX Associate Class, which is simply a subset of the Wisconsin Associate Class. *Id.* Members of the Texas Associate Class qualify to receive a payment, and become bound by the Settlement Agreement, if they opt-in to the case during the court-approved notice period. *Id.* Class members who meet these criteria are referred to as the "Settling Associates" in the Settlement Agreement and in this Motion. *Id.*

alleged damages shall be calculated for the time period January 31, 2016, to January 31, 2018. *See* Ex. A at ¶4(b)(ii).

iii. **Non-Discretionary Bonus Claims**. To account for unpaid overtime that was allegedly earned due to non-discretionary bonuses, West RG shall make the following calculation based on the available payroll and timeclock data for each Settling Associate in the Wisconsin Associate Class and Texas Associate Class. The individual payments shall include any increase in overtime pay attributable to any non-discretionary retention bonuses paid to the Settling Associate. West RG may assume that a Settling Associate's total overtime hours worked during the retention period were evenly spread across the workweeks occurring within the retention period. The individual payments shall include any additional overtime wages attributable to the non-discretionary retention bonuses, plus an additional amount of equal value to account for liquidated damages. These alleged damages shall be calculated for the time period January 31, 2016, to January 31, 2018. *See* Ex. A at ¶4(b)(iii).

West RG expects this methodology to result in payments to Settling Associates totaling approximately $367,700.00.

*Released Claims.* In exchange for the above payments, the Plaintiff and Settling Associates (collectively, the "Releasors") agree to release and forever discharge West Revenue Generation Services, LLC, West Corporation, their past, present, and future parents, affiliates, and predecessors, and their respective past, present, and future divisions, subsidiaries, affiliates, and related companies, and all of their successors, assigns, directors, officers, employees, attorneys, agents, and representatives, both personally and in their representative capacities (collectively, the "Releasees"), of and from all manner of claims, actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, damages (including but not limited to attorneys' fees), and demands related to any dispute regarding employment compensation, including but not limited to wage and hour disputes, related retaliation claims, any claim arising under the FLSA, state and local wage and hour laws in Wisconsin, Texas, or any other state or locality, the WWPCL, Wisconsin Hours of Labor Laws, Wis. Stat. §§ 103.01 *et seq.*, Wisconsin Minimum Wage Law, Wis. Stat. Chap. 104, Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 *et seq.* and 274.01 *et seq.*, Wisconsin Wage Deduction Statute, Wis. Stat. § 103.455, or Wisconsin Wage Payments, Claims and

Collections Law, Wis. Stat. Chap. 109, and common law claims related to wages such as conversion or breach of contract, whether in law or equity, which he/she ever had, may have had, now has, or which his/her heirs, executors, or administrators hereinafter can, shall, or may have, as a result of any act or omission by the Releasees from the beginning of time through the effective date of the Settlement Agreement, whether known or unknown, asserted or unasserted, suspected or unsuspected (collectively, the "Released Claims"). The Releasees further covenant not to sue or otherwise initiate litigation based on any of the Released Claims. *See* Ex. A at ¶12.[2]

## IV.     **Preliminary Approval of Settlement is Appropriate**

A class action settlement may be approved under Rule 23 if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,* 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). The Seventh Circuit considers the following factors when determining whether a proposed class action settlement is fair, adequate, and reasonable: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *See Langendorf v. Conseco Senior Health Ins. Co.*, No. 08-CV-3914, 2009 U.S. Dist. LEXIS 131289, at *19-20 (N.D. Ill. 2009) (citing *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). Federal courts generally favor resolution of class action litigation by settlement. *See Isby v. Bayh*, 75 F.3d 1191,

---

[2] If there is any discrepancy between the Settlement Agreement and any description of the Settlement Agreement in this Motion, the parties intend for the Settlement Agreement to control, subject to Court approval.

1996 (7th Cir. 1996). At the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" so as to warrant sending notice to class members and proceed with a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

Similarly, an FLSA settlement requires court approval to be valid and enforceable. *See Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 306 (7th Cir. 1986). Employees can only compromise and settle their rights under the FLSA if the Court approves the settlement as a fair and reasonable resolution of a bona fide dispute. *Lynn's Food Store, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). The standards for approval of the settlement of FLSA collective actions "track the considerations that the court must weigh for reviewing proposed class action settlements under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc.*, No. 15-cv-424, 2016 U.S. Dist. LEXIS 57148, at *6 (W.D. Wis. Apr. 29, 2016).

Here, the parties' Settlement Agreement satisfies all of the requirements and factors articulated above and is therefore appropriate for preliminary approval.

### A.      The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* 463 F.3d 646, 653 (7th Cir. 2006). In this case, the parties have investigated and analyzed each of Plaintiff's four claims and a substantial dispute exists as to West RG's liability. (As explained above, undisputed evidence exists that West Corp. did not employ any non-exempt employees during the relevant time period, which would eliminate any liability for the claims pled by Plaintiff because Plaintiff only purports to assert claims on behalf of non-exempt employees.) The strengths and weaknesses of Plaintiff's claims against West RG are addressed below, along with the parties' proposed settlement of such claims.

#### i.      *Off-the-Clock Work*

a.   Plaintiff's Claim:

There are two components to Plaintiff's Off-the-Clock claim: that West RG failed to

compensate its associates for pre-shift activities and work performed during their shifts.

## *Pre-Shift Activities*

Plaintiff argues that West RG recorded associates' hours worked via Kronos, a computer-based (electronic) timekeeping system, and that West RG compensated its associates based on their Kronos "log in" and "log out" times. Plaintiff argues that an associates' normal or customary pre-shift daily routine was as follows: physically arrive at West RG; physically go to his or her work area; "boot up" his or her computer; and, only after the "boot up" process on his or her computer finished, "log in" to Kronos. Only after the "boot up" process on the associates' computers had finished were they then able to open all of the other computer programs required to perform their job duties. Plaintiff argues that this "boot up" process was necessary, integral, and indispensable to an associates' ability to perform his or her job. Plaintiff argues that this "boot up" time was the point at which associates commenced daily compensable work, and further argues that it was West RG's policy in practice to compensate said employees based on their "log in" times via Kronos (which could not occur until after the "boot up" process was completed), as opposed to when compensable work commenced via this computer "boot up" process each workday.

## *Work Performed During Associates' Shift*

Plaintiff argues that on a daily basis during the work day, associates had to "log in" to a phone system program unique to American Express in order make and/or receive telephone calls, which was a necessary component to associates' job duties. Associates' job performance and bonus potential was based, in large part, on their phone system "log in" times vis-à-vis their Kronos "log in" times – commonly referred to as an associates' "Labor Efficiency." Associates' bonuses were based on their "Labor Efficiency," which Plaintiff alleges made it financially advantageous if associates' phone system "log in" times compared favorably to their Kronos "log in" times. In other words, Plaintiff argues that it was often times more financially advantageous for associates to be "logged into" the phone system and working while "logged out" of Kronos. Plaintiff argues that this practice of "off-the-clock work" was routinely

recognized and understood by associates and West RG's management alike, and Plaintiff is prepared to present witness testimony and tangible documentary evidence to this effect.

      b.   West RG's Defenses:

West strongly denies Plaintiff's allegations, or that collective or class certification is appropriate. If this matter were to proceed to trial, West RG is prepared to marshal witnesses to testify there are no systemic problems with off-the-clock work. To the contrary, West RG's management will testify that they are extremely vigilant in ensuring that no off-the-clock work occurs. If any off-the-clock work occurred pre-shift, West RG will offer evidence that it was isolated, sporadic, and contrary to West RG's written policies. Second, West RG believes that Plaintiff's estimated start-up time is exaggerated. West RG's witnesses will testify that computer programs typically took less than 5 minutes to load (with start-up times of 1-2 minutes being common). Third, for the majority of West RG's programs, West RG is prepared to offer evidence that time spent loading computer programs actually *does* count as "productive time" paid for by West RG's clients, thereby negating any financial incentive for management to encourage off-the-clock work. With respect to class and collective certification, West RG is prepared to offer evidence that Plaintiff's claims turn on individualized deviations from West RG's established policies and practices—the type of claim that this Court has previously ruled cannot be certified on a collective or class basis. *See, e.g.*, *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942, at *21-22 (E.D. Wis. Sept. 11, 2008) (Griesbach, J.) (denying collective certification of case involving call center agents because "[a]lleged FLSA violations stemming from the enforcement decisions of individual supervisors, rather than a company-wide policy or plan are not appropriate for collective treatment"); *Miller v. Thedacare, Inc.*, No. 15-C-506, 2018 U.S. Dist. LEXIS 7767, at *13-21 (E.D. Wis. Jan. 17, 2018) (Griesbach, J.) (same for class certification).

      c.   Proposed Settlement Terms:

To resolve Plaintiff's off-the-clock claims, the parties agreed that Plaintiff would narrow her class definition by one year (to a new class period of January 31, 2016, to January 31, 2018)

to correspond with the FLSA' and WWPCL's two-year statute of limitations period. This would eliminate Plaintiff's claim for willfulness (and a corresponding three-year statute of limitations period) under the FLSA. The parties further agreed, however, that Plaintiff could expand the proposed class beyond sales associates on Plaintiff's AMEX programs to include all sales associates employed by West RG during the relevant time period. West RG then agreed to add four minutes to each shift worked by the Settling Associates (assuming five shifts each workweek) and pay each Settling Associate time-and-a-half their actual wage rate for any resulting overtime hours during the two-year period. West RG also agreed to pay an additional amount of equal value to account for liquidated damages. West RG further agreed to pay any Settling Associate with less than $20.00 of damages under this formula a minimum payment of $20.00.

### ii. *Short Meal Period Claim*

#### a. Plaintiff's Claim:

Plaintiff alleges that, under the WWPCL, West RG must compensate associates for meal periods during which compensable work was performed or if employees were not completely relieved of duty or free from work for at least thirty (30) consecutive minutes. *See* Wis. Admin. Code § DWD 274.02(3). Plaintiff argues that, after thoroughly and extensively reviewing West RG's meal period "log in" and "log out" times via Kronos, the evidence indicates that tens of thousands of associates' meal periods did not last at least thirty (30) consecutive minutes in duration. Thus, under the WWPCL, Plaintiff argues these were on-duty meal periods which were to be counted as work time and for which West RG should have legally compensated its associates.

#### b. West RG's Defenses:

West RG denies Plaintiff's allegations and maintains that Plaintiff's claim fails as a matter of law because Wisconsin law only requires employers to "*provide* at least 30 minutes free from work," Wis. Admin. Code § DWD 272.04(1)(c) (emphasis added)—not police employees to ensure they actually *take* a 30-minute meal break. At any summary judgment or

trial, West RG would intend to marshal policy documents and witnesses confirming that it *provided* all AMEX associates a 30-minute (or longer depending on the AMEX line group) meal period. This argument relies on the plain language of the law, which is consistent with the preferred interpretive approach of Wisconsin courts. *See German v. Wisconsin DOT*, 612 N.W.2d 50, 53 (Wis. 2000); *Sliwinski v. City of Milwaukee*, 777 N.W.2d 88, 93-94 (Wisc. App. Ct. 2009).

While some of West RG's employees may have returned from lunch a few minutes early at times, this fact—standing alone—does not violate Wisconsin law. Wisconsin courts have not definitively ruled on this matter, but courts in other states with analogous regulations have done so. For example, the California Supreme Court has held that a similar California law requires an employer to "relieve the employee of all duty for the designated [meal] period, but need not *ensure* that the employee does not work." *Brinker Restaurant Corp. v. Superior Court*, 273 P.3d 513, 532 (Cal. 2012) (emphasis added); *see also Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2013 U.S. Dist. LEXIS 51941, at *21 (D. Or. Jan. 28, 2013) ("[T]here is no duty to ensure that employees are not working through unpaid meal breaks."). In addition, the evidence at trial would be that the vast majority of the meal periods at issue were less than 3 minutes short (between 27 and 29 minutes), which would support a *de minimis* defense. *See Miller v. Thedacare Inc.*, No. 15-C-506, 2018 U.S. Dist. LEXIS 7767, at *27-28 (E.D. Wis. Jan. 17, 2018) (Griesbach, J.) (applying *de minimis* doctrine to meal period claims under Wisconsin law).

The outcome of any future certification dispute is also uncertain. West RG has argued that Plaintiff's meal period claim is not appropriate for class certification because courts have rejected class treatment where employees, for a variety of individualized reasons, do not consistently take their full 30-minute meal periods. *See, e.g., Aguilera v. Waukesha Mem. Hosp., Inc.*, No. 13-C-1245, 2015 U.S. Dist. LEXIS 79143, at *9-22 (E.D. Wis. June 18, 2015) (denying class certification of Wisconsin meal break claims where "differing circumstances" meant "there is no single answer to the question whether housekeepers worked during meal breaks"); *Chavez v. Lumber Liquidators, Inc.*, No. CV-09-4812 SC, 2012 U.S. Dist. LEXIS 40984, at *8 (N.D.

Cal. Mar. 26, 2012) (denying class certification because claims required individualized inquiries into whether the employer forced each employee to work through the meal period).

      c.  Proposed Settlement Terms:

Despite the parties' belief in their respective positions, the parties ultimately agreed to settle the meal period claim. West RG has agreed to pay all sales associates employed on its AMEX programs between January 31, 2016, through January 31, 2018 (the Wisconsin AMEX Associate Class) based on the following formula: any Settling Associate who took a meal period lasting between 21 to 26 minutes during the relevant time period will be paid for the length of the meal period at a standard rate of $12.50 per hour, plus a 50% increase. Despite the significant risk that the Settling Associates could receive no recovery on meal period claims if litigation continued, this formula would result in full recovery for the claims that are less amenable to a *de minimus* defense. Accordingly, this compromise is fair, reasonable, and adequate to the Settling Associates in the Wisconsin AMEX Associate Class.

### iii. Overtime/Bonus Claim

      a.  Plaintiff's Claim:

Plaintiff asserts that West RG owes unpaid overtime to its non-exempt employees because it allegedly failed to properly account for certain non-discretionary bonus payments, such as incentive bonuses, referral bonuses, and retention bonuses, when calculating the "regular rate" for overtime pay purposes. Plaintiff's attorneys have interviewed the Director of Payroll responsible for West RG to verify its bonus allocation process.

      b.  West RG's Defenses:

*Incentive Bonus*. Absent settlement, West RG will introduce evidence (which it has shared with Plaintiff's counsel) that it has payroll systems in place that retroactively calculate and pay the appropriate "overtime differential" owed whenever an incentive bonus is paid to a sales associate. Plaintiff acknowledges that the allocation process for incentive bonuses, as represented, would comply with the FLSA and WWPCL. West RG's payroll records reflect that these incentive bonuses were the overwhelming majority of bonuses paid to West RG sales

associates, both in frequency and amount, during the relevant time period.

*Referral Bonus*. West RG also pays associates a referral bonus when they refer a prospective employee to the company and the referral results in a successful hire. No overtime differential is calculated for referral bonuses. This is because any referrals are purely voluntary, should not require a significant amount of time by employees to earn, and are intended to allow an employee to draw from an employee's existing network of friends, family, and acquaintances. Such referral bonuses are not paid for time worked and would thus be exempt from overtime calculations. *See Shiferaw v. Sunrise Senior Living Mgmt.*, No. LA CV13-02171-JAK, 2016 U.S. Dist. LEXIS 187548, at *71 (C.D. Cal. March 21, 2016) (setting forth factors for lawful referral bonuses).

*Retention Bonus*. In the course of investigating Plaintiff's bonus claims, West RG discovered that, on a few occasions, West RG has paid retention bonuses to associates and did not include those bonuses in the calculation of the "regular rate" for overtime pay purposes.

      c. Proposed Settlement Terms:

With respect to retention bonuses only, West RG has agreed pay each of the Settling Associates any increase in overtime pay attributable to retention bonuses received from January 31, 2016, to January 31, 2018, plus an additional amount of equal value to account for liquidated damages. This calculation, based on actual hours worked and wage rates, provides a full recovery to each Settling Associate for overtime related to retention bonuses.

      ***iv.***     ***Failure to Pay Agreed Wage***

      a. Plaintiff's claim:

Finally, Plaintiff alleges that West RG violated the WWPCL, specifically Wis. Stat. § 109.01(3), by failing to pay agreed wages to non-exempt employees. Plaintiff argues that Defendants' online employee handbook, which defines "overtime hours" as "any additional time worked in excess of forty (40) hours per week *or in excess of eight (8) hours in one day*, or in compliance with state law." Plaintiff argues that this language required West RG to pay premium overtime rates to non-exempt employees for any time worked over 8 hours in a day during those

instances when said employees did not work in excess of forty (40) hours per week in accordance with West RG's established policy. *See* Wis. Stat. § 109.01(3); *Goldman v. Lawton & Cates, S.C.*, 2015 WI App 28, 42 (Wis. Ct. App. 2015).

  b. West RG's Defenses:

  West denies Plaintiff's allegations with respect to her "failure to pay agreed wage" claim. It is undisputed that West RG has always paid overtime to its Wisconsin associates for hours worked over 40 in a week, not 8 in a day. Further, under Wisconsin law, an employee handbook (like the one cited by Plaintiff) can be an enforceable agreement if the handbook contains express provisions from which it "reasonably could be inferred" that the parties "intended" the handbook to be binding. *Tasker v. Chieftain Wildrice Co.*, No. 02-1837, 2003 Wisc. App. LEXIS 302, at *3-14 (Wis. Ct. App. March 25, 2003). But when a handbook includes a disclaimer—expressly disclaiming that its policies and provisions create an employment contract—the handbook is generally not an enforceable agreement. *Id.* at *11 (holding handbook "merely provided guidelines and information and did not constitute an employment contract of any kind"). Here, Defendants' handbook, copies of which were produced to Plaintiff's counsel, contains lengthy disclaimers that the handbook's provisions do not constitute a binding agreement. These disclaimers also appear in Statements of Understanding signed by West RG sales associates, which were also produced to Plaintiff's counsel. These disclaimers will preclude any recovery on Plaintiff's agreed wage claim based on Defendants' handbook provisions.

  Further, to the extent Plaintiff relies on an "established policy" to pay overtime based on an 8-hour day, West RG will provide evidence at any trial that no such policy exists. The language in the handbook is disjunctive: overtime will be paid based on a 40-hour workweek "or" an 8-hour day. This is because the handbook applies to West Corp. subsidiaries in other states besides Wisconsin, and certain states require payment of overtime based on an 8-hour day. In Wisconsin, however, the law only requires payment of overtime based on a 40-hour workweek. Moreover, West RG has *never* paid any Wisconsin employees overtime based on an 8-hour day (and the Plaintiff and consenters never requested such overtime prior to this lawsuit).

Finally, because the agreed wage claim will necessarily turn on individualized factors unique to each sales associate, such as the sales associate's individual understanding as to the meaning of the handbook provision, class certification is highly unlikely.

      c.  Proposed Settlement Terms:

If the case is not resolved by settlement, West RG will file a motion for partial summary judgment on this claim based on the arguments set forth above, and Plaintiff will vigorously oppose said motion. Regardless, Plaintiff acknowledges that this Court could grant West RG's dispositive motion. Due to West RG's defenses to this claim, the Settlement Agreement does not specifically allocate any payment based on Plaintiff's agreed wage claim. However, the parties believe the other payments provided for in the Settlement Agreement are adequate consideration for a resolution of the case as a whole, including the agreed wage claim.

*     *     *

While the parties continue to maintain a strong belief in their respective positions on the merits of Plaintiff's claims and the possibility of class and collective certification, they recognize the significant costs associated with litigating this case through discovery, motion practice, and trial. As a result, the parties have entered into the Settlement Agreement. From the Settling Associates' perspective, the settlement avoids the risk that West RG and West Corp. would prevail on their defenses and that the Settling Associates would recover nothing at trial. Moreover, West RG is directly paying all attorneys' fees and litigation expenses, totaling $165,000.00, and the fees of the settlement administrator, which have been estimated to be approximately $14,000.00. Thus, and importantly for purposes of settlement, these attorneys' fees, litigation expenses, and settlement administration payments are *not* taken as a percentage of the Settling Associates' payments or of the Settlement Fund, which, as mentioned above, total approximately $367,700.00. *See* Ex. A at ¶ 2. These payments are agreed-upon between the parties and are *in addition* to the Settling Associates' payments. *Id.* Thus, the overall balance supports approval of the Settlement Agreement.

**B. The Complexity, Length, and Expense of Litigation**

The complexity, expense, and length of continued litigation militate in favor of approving this Settlement Agreement. As set forth above in Section IV.A., both sides acknowledge that the parties' respective positions are substantially complicated due to numerous disputes over factual issues and legal theories. The litigation spans thousands of employees, multiple call center locations across two states, and more than one hundred different call-center programs for various clients. Litigation of this matter through trial would require considerable time, effort, and expense for both sides, including many depositions and extensive document review and production.

Additionally, Plaintiff will seek class and collective action certification, and West RG and West Corp. will vigorously contest class and collective action certification due to the individualized nature of Plaintiff's claims and, if necessary, will move for decertification of the FLSA class under the two-step certification process endorsed by the Seventh Circuit. The time and expense associated with discovery, briefing, and hearings on class and collective certification alone would be substantial and further supports the parties' decision to enter into an early Settlement Agreement. Moreover, if West RG and West Corp. successfully defeat class and/or collective certification, Plaintiff and the Settling Associates would bear the expense of litigating their claims on an individual basis. With this in mind, from all parties' perspective, settlement is favored.

**C. The Absence of Fraud or Collusion in the Settlement**

In the instant case, there is a bona fide dispute over whether West RG and West Corp. violated the FLSA and WWPCL on Plaintiff's claims. As set forth above in Section IV.A., West RG and West Corp. assert multiple defenses to Plaintiff's claims, both on the merits and against class and collective certification. Prior to mediation, the parties exchanged detailed documents and information on each of Plaintiff's claims and engaged in extensive settlement communications. The Settlement Agreement was reached during a full-day mediation process overseen by Judge Sickel as described above. Given these considerations and based on the

substantial sums to be paid to Plaintiff and the Settling Associates under the Agreement, it is clear that there was no fraud or collusion. The settlement will provide Plaintiff and the Settling Associates with a fair recovery while eliminating the risks and costs both sides would bear if this litigation continued to a resolution on the merits.

### D.    The Lack of Opposition to the Settlement

The parties are unaware of any opposition to the settlement. If any opposition surfaces before the Fairness Hearing, the parties will address that matter with the Court.

### E.    Counsel's Opinion

Counsel for the parties support the settlement. As experienced practitioners in the area of wage and hour class and collective actions, the parties' counsel recognized the uncertainty of proceeding through trial and sought a fair and equitable compromise that might resolve the case short of trial. Despite their divergent views regarding Plaintiff's allegations, counsel engaged in arms-length negotiations and ultimately reached a settlement that they consider to be fair, reasonable, and adequate given all the considerations above.

### F.    The Amount of Discovery and Stage of Proceedings

As noted above, the parties have exchanged initial disclosures, and Plaintiff served written interrogatories and requests for production. West Corp. responded to the interrogatories and requests for production and verified that it has had no non-exempt employees during the relevant time period. Although no formal depositions have been taken, Plaintiff interviewed West RG's and West Corp.'s Director of Payroll to discuss the method by which West RG allocates non-discretionary bonuses for purposes of calculating overtime pay. In addition, West RG voluntarily produced substantial information to Plaintiff, including: weekly reports of hours worked and wages for all of West RG's associates who worked on programs servicing AMEX during the two years prior to suit; daily meal punches for all of West RG's associates who worked on programs servicing AMEX over the last two years; general West RG policy documentation; policy acknowledgements by Plaintiff and the consenters; and earnings information for Plaintiff and the consenters. The parties further exchanged detailed settlement

communications, position statements, and calculations in accordance with the Mediation Order. (ECF No. 26.)

Over the course of the case, the parties have had ample time and information to evaluate the risks of continued litigation versus settlement. Additional discovery proceedings would not help to materially crystallize the parties' positions any further.

## V.    The Proposed Classes Should Be Certified For Purposes of Settlement

### A.    Numerosity

The numerosity requirement of Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. While there is no explicit cut-off, the Seventh Circuit has found classes of 40 individuals sufficient. *See Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). This case easily meets this requirement for purposes of settlement, as West RG currently estimates that there are approximately 4,888 members of the Settlement Classes, including 4,207 members of the Wisconsin Associate Class and 1,685 members of the Wisconsin AMEX Associate Class.

### B.    Commonality

Rule 23(a)(2) requires that class members share a common question of law or fact. Commonality is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *See Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Doster Lighting, Inc. v. E-Conolight, LLC*, No. 12-C-0023, 2015 U.S. Dist. LEXIS 78499, at *12 (E.D. Wis. June 17, 2015) (quoting *Suchanek v. Sturm Foods*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.")).

Here, while West RG and West Corp. continue to maintain that class and collective certification for liability purposes is not appropriate, Defendants do not oppose and join in

Plaintiff's request that the claims be certified for purposes of settlement only. Plaintiff maintains that both of the Rule 23 classes comprise members with identical wage-and-hour claims arising under the same statutes—the FLSA and WWPCL—based upon similar allegedly unlawful pay practices applicable to the class members as a whole (i.e., whether West RG's 30-minute meal period violates the WWPCL; whether West RG failed to properly account for non-discretionary bonuses in the "regular rate" of pay for overtime purposes; and whether West RG failed to pay an agreed wage based on the same handbook provision).

## C. Typicality

The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations and internal quotation marks omitted). Stated another way, the class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009); *see also Fond du Lac Bumper Exchange, Inc. v. JuiLi Enterprise Co., Ltd.*, No. 09-cv-0852, 2016 U.S. Dist. LEXIS 82434, at *13-1410 (E.D. Wis. June 24, 2016).[3] Defendants again deny that class or collective certification is appropriate for liability purposes, but have agreed to not oppose and to join in Plaintiff's request for certification for settlement purposes only.

Plaintiff maintains that her claims and those of the proposed classes share many of the same essential characteristics for purposes of settlement and that typicality is therefore satisfied for purposes of settlement. The claims all relate to: (i) failure to pay for alleged off-the-clock work; (ii) failure to pay for meal periods lasting less than thirty minutes; (iii) failure to properly account for non-discretionary bonuses in the "regular rate" of pay for overtime purposes; and (iv) failure to pay overtime for time worked over eight hours in a day.

---

[3] Typicality focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

**D.      Adequacy of Representation**

Plaintiff and her counsel maintain that she will provide fair and adequate protection for the interests of the class as required by Rule 23(a)(4). That protection involves two factors: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

Both considerations are satisfied here. Plaintiff has represented she understands the obligations of a class representative, and has retained experienced counsel, as indicated by the Declaration of Scott S. Luzi attached hereto as Exhibit D, which sets forth Plaintiff's counsel's qualifications. Further, Plaintiff seeks, on behalf of herself and the members of the Settlement Classes, money damages pursuant to the FLSA and WWCLA as a result of West RG's and West Corp.'s alleged unlawful pay practices. Given the identity of claims, there is neither the potential for conflicting interests nor any antagonism between the interests of Plaintiff and class members.

**E.      Predominance and Superiority**

Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) ("Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense."). To make this determination, the Court must consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

In this instance, while the class members may have a theoretical interest in controlling their own claims, they also have an interest in resolving their claims efficiently. The proposed Settlement Agreement provides that efficiency. Indeed, the Seventh Circuit has held that a class action is an efficient and effective way to obtain relief for individual class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Pursuing each class member's claim individually would take time and money, with no guarantee of a better outcome.

The Settlement Agreement provides a relatively simple process for calculating each Settling Associate's recovery, and that process will provide the Settling Associates with a recovery that is similar to (and in some cases, may exceed) what they might otherwise recover on their own. Here, there is no other related litigation pending, consolidating all the claims before this Court is efficient and desirable, and there will be no difficulties in managing this class action in light of the parties' settlement. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."). There is also no prejudice to any class members because any member of the class who prefers to litigate his or her claim separately may opt out of the class during the notice process. As noted in *Black v. Renaissance Learning, Inc.* by the U.S. District Court of the Western District of Wisconsin:

> The goal is to achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. Because consolidating the class members' claims into a class action will accomplish that goal, a class action is the best way to proceed in this case.

No. 15-cv-635, 2016 U.S. Dist. LEXIS 192763, at *10-11 (W.D. Wis. Nov. 10, 2016) (internal quotations and citations omitted).

## VI.     The Proposed Collective Class Satisfies the FLSA For Purposes of Settlement

Courts have held that, where a Plaintiff satisfies the Rule 23 standards for class

certification, that Plaintiff also satisfies the standards for certification of a FLSA collective action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.") (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)); *see also Bontempo v. Metro Networks*, No. 01 C 8969, 2002 U.S. Dist. LEXIS 11810, at *2 (N.D. Ill. 2002) ("Under the FLSA, the representative need only show that the plaintiffs are similarly situated."). Accordingly, Plaintiff requests, and West RG and West Corp. do not oppose, certification of the Texas Associate Class for purposes of settling the FLSA claim asserted on behalf of that class. This class is estimated to have approximately 681 members.

## VII.  **The Proposed Notice and Manner of Service are Appropriate**

In order to protect the rights of absent members of a Rule 23 class, the Court must provide the best notice practicable of the settlement to all class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The Seventh Circuit has found that notice satisfies Rule 23 due process, and binds all members of the class, if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement and the method for objecting to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and (6) prominently displays the address of class counsel and the procedure for making inquiries. *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222, 232 (S.D. Ill. 2001) (citing *Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (holding that due process was satisfied by notice that explained the status of proceedings, significance of judicial approval of settlement, and opportunity to object at the hearing)). Likewise, "notice of FLSA claims must give potential class members enough information to

'make informed decisions about whether to participate.'" *Black*, 2016 U.S. Dist. LEXIS 192763 at *19 (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the proposed notice plan provides for Plaintiff's counsel to distribute two separate notices: one to the Wisconsin Associate Class and Wisconsin AMEX Associate Class attached hereto as Exhibit B, and one to the Texas Associate Class attached hereto as Exhibit C. The contents of these notices meet all of the six criteria set forth above, clearly identifying the options available to the members of the Settlement Classes and comprehensively explaining the nature and mechanics of the settlement.

The proposed manner of sending notice is also sufficient. The notices will be sent by first class mail to the last known mailing address of all members of the Settlement Classes identified through reasonable efforts by West RG according to its business records. *See Mangone*, 206 F.R.D. at 231-32 ("Neither Rule 23 nor due process require receipt of actual notice by all class members; rather, notice should be mailed to the last known addresses of those who can be identified . . . ."); *accord Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985); *see also Woods v. Club Cabaret, Inc.*, No. 1:15-cv-01213-JEH, 2017 U.S. Dist. LEXIS 198896, at *28 (C.D. Ill. 2017) (approving notice sent by U.S. Mail to the FLSA opt-in plaintiffs and eligible Rule 23 claimants); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'" (quoting *Eisen*, 417 U.S. at 177)).

Accordingly, the proposed notices attached as Exhibits B and C, as well as the manner of sending notice, comply with Rule 23 and due process and should be approved by the Court.

## VIII.   <u>Plaintiff's Incentive Award</u>

The Settlement Agreement contemplates an incentive award of $7,500.00 to named Plaintiff Tracy Gerlach. The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir.

1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, Plaintiff requests an award of $7,500.00, which Plaintiff maintains is justified based on the benefit she provided the Settling Associates by initiating this lawsuit and assisting with the negotiation of the Settlement Agreement at the mediation. West RG and West Corp. do not oppose this request in this amount. Further, Plaintiff is not seeking payment of this amount as a percentage from common settlement fund. Rather, West RG and West Corp. have agreed to pay this amount directly to Plaintiff as part of the negotiated settlement of this matter. *See* Ex. A at ¶ 2. As such, this payment is *not* taken as a percentage or portion of the Settling Associates' payments, identified above.

## IX.    Plaintiff's Attorneys' Fees and Requested Reimbursement of Litigation Expenses

As a result of this litigation and in furtherance of its resolution, the Settlement Agreement contemplates that West RG and West Corp. will compensate Plaintiff's counsel, Walcheske & Luzi, LLC, with a total monetary amount of $165,000.00 as representative of the actual amount of attorneys' fees and costs spent litigating this matter to date and the anticipated amount of attorneys' fees and costs that will continue to be spent litigating this matter through its ultimate conclusion. (*See* Declaration of Scott S. Luzi, Exhibit D, ¶ 13.) West RG and West Corp. do not oppose Plaintiff's counsel's request in this amount, which was negotiated with counsel for West RG and West Corp. during the mediation of this matter.

Further, this amount will *not* come from or be taken as a percentage or portion of a common settlement fund for any individuals who have opted-in (or who have not opted-out) to the settlement. (*See* Ex. A at ¶ 2; *see also* Ex. D, ¶¶ 12-13. West RG and West Corp. will pay this amount directly to Plaintiff's counsel if approved by this Court, and the parties believe that this amount is fair, reasonable, and representative of the actual and anticipated amount of time and cost that Plaintiff's counsel has spent (and will continue to spend) litigating this matter through its ultimate conclusion. (*Id.* at ¶¶ 12-14.)

Because this matter does not involve the payment of attorneys' fees and costs as a percentage of a common settlement fund, this Court does not need to apply common fund principles in order to approve Plaintiff's counsel's attorneys' fees and costs. *See, e.g., Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994) (stating that, "when a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund"); *see also Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013); *In re Synthroid Mktg. Litig.*, 264 F.3d 712 (7th Cir. 2001) ("*Synthroid I*"); *In re Synthroid Mktg Litig.*, 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"). Rather, when a plaintiff is a prevailing party,[4] and thus entitled to reimbursement for attorneys' fees and costs under a fee-shifting statute such as the FLSA, *see* 29 U.S.C. § 216(b), courts determine reasonable attorneys' fees and costs by using the "lodestar" approach: calculating the reasonable hourly rate multiplied by the hours reasonably expended.[5] *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983); *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640-43 (7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999); *Bankston v. Illinois*, 60 F.3d 1249, 1255 (7th Cir. 1995).

Here, not only are Plaintiff's counsel's hourly rates and hours expended reasonable, (*see* Ex. D, ¶¶ 7-8, 10-11, 14), but West RG and West Corp. have agreed to pay Plaintiff's counsel's reasonable attorneys' fees and costs in the total amount of $165,000.00. (*Id.* at ¶ 13.)

---

[4] Plaintiff is a prevailing party here. A plaintiff who favorably settles his or her case is considered a prevailing party under the FLSA. *See* 29 U.S.C. § 216(b); *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 595 (7th Cir. 1999); *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001); *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 893 (7th Cir. 2001). A case is favorably settled for a plaintiff if he or she recovers a portion of the damages alleged or if "the lawsuit was causally linked to the relief obtained." *Connolly*, 177 F.3d at 595; *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir.1997).

[5] The lodestar approach forms the "centerpiece" of attorneys' fee determinations, and it applies even in cases where the attorney represents the prevailing party pursuant to a contingent fee agreement. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *Pickett*, 664 F.3d at 639.

## X.      The Parties' Notice Plan

The Parties jointly request that the Court set the following schedule for the Settlement Agreement:

(a)     West RG shall provide the names and last known addresses of the members of the Settlement Classes to Plaintiff's counsel within 14 days after the Preliminary Approval Order is signed;

(b)     Plaintiff's counsel shall mail the Notice of Class Action Settlement (Exhibit B) to the Wisconsin Associate Class and Wisconsin AMEX Associate Class within 14 days after receiving the list of names and addresses;

(c)     Plaintiff's counsel shall mail the Notice of Right to Join Lawsuit (Exhibit C) to the Texas Associate Class within 14 days after receiving the list of names and addresses;

(d)     Members of the Settlement Classes shall have 45 days after the initial mailing of the notices to either opt in to, or out of, the case or object to the Settlement Agreement (as appropriate for each class); and

(e)     A final hearing on the fairness and reasonableness of the Settlement Agreement, and whether final approval shall be given to it and Class Counsel's request for fees and expenses, will be held before this Court on a date at least 90 days from the entry of the Court's Preliminary Approval Order.

## CONCLUSION

For all the reasons stated above, the parties respectfully request that the Court enter an order in the form of Exhibit E that: (1) preliminarily approves the Settlement Agreement attached as Exhibit A; (2) certifies, for settlement purposes only, the proposed Rule 23 classes and FLSA collective class; (3) appoints Walcheske & Luzi, LLC as class counsel; (4) appoints Plaintiff Tracy Gerlach as representative of the Settlement Classes; (5) approves the mailing of notice to class members in the form of Exhibit B and Exhibit C; (6) sets deadlines for class members to opt in to, or out of, the case or object to the Settlement Agreement (as appropriate for each class); (7) finds that such notice process satisfies due process; and (8) schedules a hearing for final approval of the Settlement Agreement. The parties further request any other or additional relief to which they may show themselves justly entitled.

Respectfully submitted,

**WALCHESKE & LUZI, LLC**
15850 Bluemound Road, Suite 304
Brookfield, WI 53005
262.780.1953

By:  */s/ Scott S. Luzi*
    James A. Walcheske
    Wisconsin Bar No. 1065635
    jwalcheske@walcheskeluzi.com
    Scott S. Luzi
    Wisconsin Bar No. 1067405
    sluzi@walcheskeluzi.com
    David M. Potteiger
    Wisconsin Bar No. 1067009
    dpotteiger@walcheskeluzi.com

    **ATTORNEYS FOR PLAINTIFF TRACY GERLACH**

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
512.652.5780
512.682.2074 fax

By:  */s/ Julie A. Springer*
    Julie A. Springer
    Texas Bar No. 18966770
    jspringer@wshllp.com
    Matt C. Wood
    Texas Bar No. 24066306
    mwood@wshllp.com

R. George Burnett
Wisconsin Bar No. 1005964
gb@lcojlaw.com
**CONWAY, OLEJNICZAK & JERRY, S.C.**
231 South Adams Street
Green Bay, Wisconsin 54301
920.437.0476
920.437.2868 fax

**ATTORNEYS FOR DEFENDANTS WEST REVENUE
GENERATION SERVICES, LLC AND
WEST CORPORATION**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record herein by way of:

☐ U.S. Mail, First Class
☐ Certified Mail
☐ Facsimile
☐ Federal Express
☐ Hand Delivery
☒ ECF (electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants)

on this 14th day of September 2018, to wit:

James A. Walcheske
Scott S. Luzi
WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
(262) 780-1953
(262) 565-6469 fax
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Julie A. Springer
Julie A. Springer